Kathryne SOUTHARD, et al., Plaintiffs,

v.

BUCCANEER HOMES CORPORATION and Brigadier Homes, Inc., Defendants/Third–Party Plaintiffs–Appellants,

v.

STATE INDUSTRIES, INC., and Intertherm, Inc., Third–Party Defendants–Respondents.

No. 19776.

Missouri Court of Appeals, Southern District, Division Two.

July 18, 1995.

Motion for Rehearing or Transfer Denied Aug. 9, 1995.

Application to Transfer Denied Sept. 19, 1995.

Ronald G. Sparlin, Blanchard, Robertson, Mitchell & Carter, P.C., Joplin, for appellants.

Brad J. Fisher, Lisha A. Prater, Woolsey, Fisher, Whiteaker & McDonald, Springfield, for respondent Intertherm, Inc.

William W. Francis, Jr., Randy C. Alberhasky, Placzek & Francis, Springfield, for respondent State Industries, Inc.

GARRISON, Presiding Judge.

Defendants/third-party plaintiffs Buccaneer Homes Corporation and Brigadier Homes, Inc., appeal from the entry of summary judgments in favor of third-party defendants, State Industries, Inc. (State) and Intertherm, Inc. (Intertherm). In sustaining the motions for summary judgment, the trial court found, pursuant to Rule 74.01(b),[1] that there was no just reason for delay and that the order was final for purposes of appeal.

Plaintiffs' claims[2] arose from a fire in a mobile home in 1979 in which plaintiffs Kathryne Southard and Philip Southard were allegedly injured. Plaintiffs' initial petition, filed in 1983, alleged that defendants/third-party plaintiffs manufactured and sold the mobile home[3] and that the fire started in original equipment gas appliances. Recovery was sought on the theories of res ipsa loquitur, strict liability for product defect, and negligence, all relating to defects in the gas appliances. In 1985, defendants/third-party plaintiffs filed a third-party petition against third-party defendants, Intertherm, as manufacturer of the gas furnace in the mobile home, and State, as the manufacturer of the hot water heater, seeking indemnity for any liability they might have on plaintiffs' claims.[4]

In September 1993, plaintiffs amended their petition by adding a count which sought recovery on a negligence theory because the materials used in the mobile home were allegedly such that "the fire which occurred in Plaintiffs' mobile home spread more quickly, and the mobile home was more flammable as a result thereof...." In October 1993, Plaintiffs again amended their petition by adding a count based on strict liability in which they alleged that the mobile home was defective because of use of such materials and another count based on the strict liability theory of failure to warn. Plaintiffs did not abandon, however, their originally pleaded theories based on the fire being caused by defects in the gas appliances.

In March 1994, the third-party defendants filed motions for summary judgment relating to the third-party claims of the defendants/third-party plaintiffs. The third-party defendants essentially contended that they were entitled to a summary judgment because no evidence had been produced to establish that their respective gas appliances were defective or had caused the fire.

Plaintiffs apparently identified their first liability expert in January 1994, but his deposition had not been taken when the motions for summary judgment were first considered by the trial court on March 21, 1994. On May 16, 1994, the trial court again considered the motions for summary judgment. At that time it was disclosed that since March 21 plaintiffs had identified another liability expert and he, together with the one previously identified, had been deposed in early May. From arguments made to the trial court, we gather that both testified that the fire started at the furnace, but neither expressed an opinion that the furnace was defective. Neither could they rule out a defect as a cause. Defendants/third-party plaintiffs argued that these depositions were the first indication they had that plaintiffs might not actively pursue their claims on the basis of defective gas appliances; that they had learned in one of the expert's depositions of the possibility that a gas control valve which might have been used on the water heater and/or furnace was a type that had been the

---

1. All references to rules are to Missouri Rules of Civil Procedure 1994.

2. Plaintiffs were Kathryne Southard, a minor, by her next friend Philip Southard, and her parents, Philip Southard and Kathi Southard. They alleged personal injuries to Kathryne Southard and Philip Southard, property damage and loss of consortium.

3. Plaintiffs alleged that Brigadier Homes, Inc., did business as Buccaneer Homes when the mobile home was manufactured.

4. Defendants/third-party plaintiffs also filed a third-party petition against Brown Stove Works, Inc., the alleged manufacturer of a gas cooking stove in the mobile home, but does not appeal the entry of a summary judgment in its favor.

subject of a wide recall in the late 60's or early 70's because of defects; and they requested additional time to conduct discovery and locate experts concerning the condition of the gas appliances and their involvement in the fire.

Defendants/third-party plaintiffs also argued to the trial court that they had served interrogatories on the third-party defendants seeking to determine whether they manufactured the appliances, and if so, requesting factual information about their operation, including brochures and written materials. As far as we can ascertain from the record, the third-party defendants' motions for summary judgment were sustained before any of those interrogatories were answered.

At some point, which is unclear from the record, defendants/third-party plaintiffs also filed their motions for summary judgment against plaintiffs on the theory that if third-party defendants were entitled to summary judgment because of lack of evidence of defects in the gas appliances, they were likewise entitled to a judgment concerning those theories.

On May 16, 1994, the trial court denied the motions of defendants/third-party plaintiffs for a summary judgment, but granted them ten days to file affidavits in response to the motions of third-party defendants. Defendants/third-party plaintiffs filed two affidavits in response to the motions for summary judgment. One was by their attorney which recited that it was being filed pursuant to Rule 74.04(c)(2)[5] and stated that they had not had a sufficient opportunity to conduct discovery on the issues raised by the motions for summary judgment; that they needed discovery about the design, specifications, installation and operation of the furnace and identifying information including documents concerning the water heater; that they had served interrogatories on the third-party defendants which had not been answered; and that they needed additional time to conduct

discovery from third-party defendants concerning the nature of gas control valves used in the gas appliances because of the possibility raised in plaintiffs' expert's deposition that a certain brand used in that time period had been widely recalled because of defects.

Defendants/third-party plaintiffs also filed an affidavit by a person identified as an expert which stated his opinion that the furnace was defective in certain identified respects which caused or contributed to cause the fire. It also stated that there was a "possibility that the hot water heater ... contained a manufacturing defect consisting of a longitudinal crack in the factory made tubing, from which gas leaked."

Defendants/third-party plaintiffs made several arguments to the trial court in opposition to the motions for summary judgment. Included was the contention that in order to defend the motions for summary judgment, and thereby maintain their claims against the third-party defendants, they were placed in the position of having to procure and disclose experts and evidence which would effectively make plaintiffs' case against them on theories related to defects in the gas appliances.

The purpose of a summary judgment is to permit the trial court to enter judgment without delay, where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The propriety of a summary judgment is purely an issue of law which an appellate court reviews *de novo* on the record submitted. *Id.*

The criteria for reviewing a summary judgment on appeal are no different from those which should be employed by the trial court in ruling such motions. *Reed v. Ocello*, 859 S.W.2d 242, 244 (Mo.App.E.D.

---

5. Rule 74.04(c)(2) states in part:

    If the party opposing a motion for summary judgment has not had sufficient time to conduct discovery on the issues to be decided in the motion for summary judgment, such party shall file an affidavit describing the additional discovery needed in order to respond to the motion for summary judgment and the efforts previously made to obtain such discovery. For good cause shown, the court may continue the motion for summary judgment for a reasonable time to allow the party to complete such discovery.

1993). Our review is of the entire record in the light most favorable to the party against whom the trial court entered judgment. *General American Life Ins. v. Barrett*, 847 S.W.2d 125, 129 (Mo.App.W.D.1993). In addition to determining whether any genuine issue of material fact exists which requires a trial, we also review whether the trial court's ruling was correct as a matter of law. *State ex rel. Menkhus v. City of Pevely*, 865 S.W.2d 871, 873 (Mo.App.E.D.1993).

■ The third-party claims in the instant case were filed pursuant to Rule 52.11. That rule permits a defending party to cause a third-party petition to be served "upon a person not a party to the action who is or may be liable to the defending party for all or part of the plaintiff's claim against the defending party." Third-party claims under Rule 52.11 involve passing on to the third-party defendants all or part of the liability asserted against the third-party plaintiff. *State ex rel. Green v. Kimberlin*, 517 S.W.2d 124, 127 (Mo. banc 1974). A third-party claim is allowable if it is dependent upon the recovery against the third-party plaintiff by the original plaintiff. *American Bank of Richmond v. Missouri Farmers Ass'n.*, 695 S.W.2d 150, 152 (Mo.App.W.D.1985).

■ We hold that the trial court erred in entering the summary judgments in question. We agree with defendants/third-party plaintiffs to the extent that they argue that, as to Intertherm, the affidavit of their expert was sufficient to demonstrate the existence of a genuine issue of fact. Under Rule 74.04, a genuine issue exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d at 382; *Geary v. Mo. State Emp. Retirement Sys.*, 878 S.W.2d 918, 921 (Mo. App.W.D.1994); *Nigro v. Research College of Nursing*, 876 S.W.2d 681, 686 (Mo.App.W.D. 1994). In this instance, the expert expressed his opinion that the furnace was defective after describing the nature of his review of the available evidence.

■ We also agree with defendants/third-party plaintiffs that they adequately demonstrated that additional time was needed for discovery as contemplated in Rule 74.04(c)(2). Based on the theory of the third-party claims in the instant case, defendants/third-party plaintiffs sought a recovery against third-party defendants only if plaintiffs obtained a judgment against defendants/third-party plaintiffs. From June 1983 when the original petition was filed until September 1993 when their petition was amended to include theories of liability based on the flammability of the materials in the mobile home, plaintiffs' only theories of recovery against defendants/third-party plaintiffs were based on the fire being caused by defective gas appliances. Those theories have never been abandoned by plaintiffs. Certainly, prior to the amendments by plaintiffs, defendants/third-party plaintiffs were assured that there would be no recovery against them, and therefore no basis for their recovery against third-party defendants, unless plaintiffs were able to prove that the fire originated in one of the gas appliances. As long as those were plaintiffs' only pleaded theories against defendants/third-party plaintiffs, they should not have been expected to independently assimilate evidence that would prove plaintiffs' case in order to maintain their potential cause of action against the third-party defendants. The last amendment to plaintiffs' petition occurred only five months before the filing of the first of the third-party defendants' motions for summary judgment. Plaintiffs identified their only liability experts between January and May 1994. It was not until after the motions for summary judgment were filed that these experts were deposed and it was learned that they could express no opinions about defects in the gas appliances. Defendants/third-party plaintiffs' interrogatories seeking factual information about the gas appliances had also not been answered.[6] Under this scenario, defendants/third-party plaintiffs both adequately demonstrated that they had not had sufficient time to conduct discovery on the issues raised in the motions for summary judgment and identified the additional discovery needed.

---

6. While it is not clear from the record, the gas appliances in question were apparently inadvertently disposed of at some point and are no longer available for inspection.

The summary judgments were improvidently granted in the instant case, however, for a more fundamental reason. The key to a summary judgment is the undisputed right to a judgment as a matter of law; not simply the absence of a fact question. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d at 380. Rule 74.04(e) provides in part that a party responding to a properly supported motion for summary judgment must respond in the manner set forth in the rule, and if the party fails to do so, "summary judgment, *if appropriate*, shall be entered against that party." (Emphasis added.) This "makes plain that the movant must have first established his right to judgment as a matter of law." *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d at 381, n. 2.

In the instant case, plaintiffs' pleaded theories of recovery against defendants/third-party plaintiffs continues to include those based on defects in the gas appliances. Plaintiffs have the burden of proof on those claims. A possible result created by the granting of third-party defendants' motions for summary judgment would be that plaintiffs might yet obtain evidence of defects in one or more of the gas appliances which caused or contributed to cause the fire, submit their claims on those theories, and obtain a verdict against defendants/third-party plaintiffs. Defendants/third-party plaintiffs, however, could be prevented, by the summary judgments, from pursuing the third-party defendants to recover part or all of that judgment.

In this factual setting, we do not believe that the third-party defendants demonstrated to the trial court a right to a judgment as a matter of law. *See Adalman v. Baker, Watts & Co.*, 599 F.Supp. 752, 754–755 (D.Md.1984).[7] In a third-party practice setting involving a third-party defendant with possible common liability to plaintiff, such third-party defendant should not ordinarily be entitled to a summary judgment on a third-party petition against it so long as plaintiff's pleaded theories include the possibility of recovery against defendant/third-party plaintiff on theories that could also expose the third-party defendant to liability for all or part of such judgment. To hold otherwise would be to effectively require a defendant/third-party plaintiff to develop and disclose evidence which would effectively make plaintiff's case against that party, in order to defeat a third-party defendant's motion for summary judgment and maintain viability of its third-party claim for contribution or indemnity.

Third-party defendants in the instant case argue that *ITT* establishes that a party defending a claim need only show that there is no genuine issue as to any *one* of the elements essential to a claimant's recovery. 854 S.W.2d at 381. They effectively characterize defendants/third-party plaintiffs as claimants for summary judgment purposes. The *ITT* case, however, did not involve or discuss the application of summary judgment principles to a third-party petition or the fact that third-party practice is for the purpose of passing along part or all of a judgment which a plaintiff may in the future obtain on a claim on which it has the burden of proof. We do not believe that the language from *ITT* cited by the third-party defendants is applicable here.

The order granting third-party defendants' motions for summary judgment is reversed.

PREWITT and CROW, JJ., concur.

---

7. We realize that in *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d at 380, our Supreme Court indicated that federal authority was not as persuasive on summary judgment issues as in the past. It did say, however, that "federal cases are to be considered no more, though certainly no less, persuasive than any other nonbinding authority in the determination of summary judgment motions which are, by their very nature, susceptible primarily of a case-by-case analysis."